IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| UMBRA TECHNOLOGIES LTD. (UK), & UMBRA TECHNOLOGIES (US) INC., dba UMBRA TECHNOLOGIES,<br><br>*Plaintiffs,*<br><br>v.<br><br>PALO ALTO NETWORKS, INC.,<br><br>*Defendant.* | C.A. No.: 2:25-cv-635<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs UMBRA Technologies Ltd. (UK) ("UMBRA (UK)") and UMBRA Technologies (US) Inc. ("UMBRA (US)") (collectively "UMBRA" or "Plaintiffs"), for their Complaint against Defendant, Palo Alto Networks, Inc. ("PAN" or "Defendant"), allege the following:

**NATURE OF THE ACTION**

1.  This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

**THE PARTIES**

2.  Plaintiff UMBRA (UK) is a company organized under the laws of the United Kingdom for the British Virgin Islands with a place of business at OMC Chambers, Wickhams Cay 1, Road Town, Tortola, British Virgin Islands, United Kingdom.

3. Plaintiff UMBRA (US) is a company organized under the laws of the state of Delaware with a place of business at 4 Richmond Square, Suite 102, Providence, Rhode Island 02906

4. Upon information and belief, Defendant Palo Alto Networks, Inc. is a corporation organized and existing under the laws of the state of Delaware, with a principal place of business located at 3000 Tannery Way, Santa Clara, California 95054.  Upon information and belief, PAN sells, offers to sell, and/or uses products and services throughout the United States, including in this judicial district, and introduces infringing products and services into the stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.

## JURISDICTION AND VENUE

5. This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §1400(b).

8. On information and belief, PAN has committed acts of infringement in this District and maintains multiple established places of business in the state of Texas including in this District, specifically including, 3901 North Dallas Parkway, Plano, Texas 75093, a regular and established place of business in this district.

9. This Court has personal jurisdiction over PAN under the laws of the State of Texas, due at least to their substantial business in Texas and in this judicial district, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or

deriving substantial revenue from goods and services provided to individuals in the State of Texas.

## BACKGROUND

### The Invention

10. Carlos Eduardo Oré and Joseph E. Rubenstein are inventors of U.S. patent no. 10,574,482 ("the '482 patent"). Carlos Eduardo Oré, Thibaud Auguste Bernard Jean Saint-Martin, and Joseph E. Rubenstein are inventors of U.S. patent no. 10,659,256 ("the '256 patent"). Joseph E. Rubenstein, Carlos Eduardo Oré, Jørn Allen Dose Knutsen, Fred Broussard, and Thibaud Auguste Bernard Jean Saint-Martin are inventors of U.S. patent no. 11,503,105 ("the '105 patent"). Thibaud Auguste Bernard Jean Saint-Martin, and Joseph E. Rubenstein are inventors of U.S. patent no. 11,799,687 ("the '687 patent"). Joseph E. Rubenstein and Carlos Eduardo Oré are inventors of U.S. patent no. 12,160,328 ("the '328 patent"). Collectively, the foregoing individuals are referred to as "the Inventors". A true and correct copy of the '482 patent is attached as Exhibit 1. A true and correct copy of the '256 patent is attached as Exhibit 2. A true and correct copy of the '105 patent is attached as Exhibit 3. A true and correct copy of the '687 patent is attached as Exhibit 4. A true and correct copy of the '328 patent is attached as Exhibit 5.

11. The '482 patent, the '256 patent, the '105 patent, the '687 patent and the '328 patent (collectively, the "patents in suit") resulted from the pioneering efforts of the Inventors in the 2010s, in areas related to secure network optimization, virtual networks including large area or global virtual networks (GVNs), next generation software-defined wide area networking (SD-WAN), advanced smart routing (ASR), slingshot interconnection systems for sending files for example via remote direct memory access (RDMA), security such as multiple perimeter firewalls

and other technologies. These efforts resulted in the development of systems and methods for improving the performance of internet connections and large networks. For example, the inventions improve quality of service in a virtualized network. The SD-WAN inventions provide a wide range of benefits for individuals and distributed organizations, including improved architectures for implementing highly efficient, secure, optimized virtual WAN architectures over the top of the regular internet and other network fabrics. The multi-perimeter firewall inventions help secure SD-WAN virtualized networks by implementing a distributed, cooperative firewall system within/at boundaries of a virtualized network.

12.     At the time of these pioneering efforts, the most widely implemented technology in use involved multiprotocol label switching, or MPLS, a networking technology that routed traffic using the shortest path based on "labels," rather than network addresses. MPLS networks have the disadvantage of needing to transmit all traffic from the branch to a centralized data center and have limited capabilities for low latency/high performance access to cloud applications. In addition, the security and management requirements associated with disparate traffic flows in MPLS adds to the complexity of managing network operations, thus increasing operational requirements. The inventions claimed in the patents in suit overcome these limitations in traditional MPLS networks as well as other limitations in various prior art technologies. As one example, the patented inventions disclosed in the patents in suit provide a number of advantages over the prior art and improve the operations of virtualized networks implementing highly efficient, secure, optimized virtual WAN architectures.

13.     Because of these significant advantages that can be achieved using various embodiments of the patented inventions, the patents in suit have significant commercial value for companies like PAN. Indeed, PAN implements their products and services in virtualized

network architectures having features which utilize the patented inventions, providing convenience and efficiency for its customers, enhancing the customer engagement and experience of its customers, and increasing the efficiency of its own operations and those of their customers and affiliates, in addition to other benefits.

**Technological Innovation**

14.     The patented inventions disclosed and claimed in the '482 patent and the '328 patent (both in the same family and with matching specifications) resolve technical problems related to a multi-perimeter firewall system in a cloud/virtualized network, particularly problems related to the distribution of workload and threat information, and utilization of stateful and deep-packet inspections in a virtualized firewall system.  As the '482 and '328 patents explain, one of the limitations of the prior art use of firewalls is, for example, a "firewall has traditionally been placed at the edge between one network such as a local area network (LAN) and another network such as an uplink to a broader network". (*See, e.g.*, '482 patent, Ex. 1 at 5:60-65; '328 patent, Ex. 5 at 5:62-6:05.)  The inventions of the '482 and '328 patents increase the utility of firewalls by extending and improving their use into a virtualized network and/or cloud, thus addressing sensitivities by network administrators as to the placement of their firewalls.  ('482 patent, Ex. 1, at 5:45–67; '328 patent, Ex. 5 at 5:53-6:06.)

15.     The patented inventions disclosed and claimed in the '256 patent and the '687 patent (both in the same family and with matching specifications) also resolve technical problems related to systems and methods of operating a network system for connecting devices via a global virtual network.  As the '256 and '687 patents explain, in a network system there is often little to no control over the routes between two points as they rely on the policies of middle players on the internet who carry their traffic over their networks. (*See, e.g.*, '256 patent, Ex. 2 at

2:23-26, '687 patent, Ex. 4 at 2:23-26.) The virtual interfaces (VIFs) and VIF structures claimed in the '256 and '687 patents can act as hook points for multiple network tunnels and allow for the shifting of time and resource intensive operations. ('256 patent, Ex. 2 at 1:20-23 and 7:1-6, '687 patent, Ex. 4 at 1:20-23 and 7:2-8.) The inventions of the '256 and '687 patents increase quality of service in the GVN related to network connectivity which improves general performance and enhances user experience. ('256 patent, Ex. 2 at 6:58-62, '687 patent, Ex. 4 at 6:62-66.)

16. The patented inventions disclosed and claimed in the '105 patent resolve technical problems related to systems and methods of receiving and delivering content into different geographic regions via remote access point servers. As the '105 patent explains, when retrieving content from remote server locations, there is little to no control over a network path taken between servers, which can result in slow speeds and low bandwidth. (*See, e.g.*, '105 patent, Ex. 3 at 2:1-13.) The inventions of the '105 patent enhance regional content retrieval that can utilize a combination of smart-routing and point to multi-point topology to provide advantages of concurrent streams from multiple remote regions ('105 patent, Ex. 3 at 4:46-58) to allow for multiple, concurrent secure and fast streams to multiple regions with low latency and hop count ('105 patent, Ex. 3 at 2:19-21).

17. The claims of the patents in suit do not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claims of the patents in suit patent recite inventive concepts that are deeply rooted in engineering technology and overcome problems specifically arising out of how to improve the reliability, speed, and efficiency of a virtualized network.

18. In addition, the claims of the patents in suit recite inventive concepts that improve the functioning of a virtualized network, particularly in overcoming the disadvantage of needing

6

to transmit all traffic from a branch to a centralized data center and addressing the limited capabilities of an MPLS network for low latency while providing high performance access to cloud applications.

19. Moreover, the claims of the patents in suit recite inventive concepts that are not merely routine or conventional use of networking technology. Instead, the patented inventions disclosed and claimed in the patents in suit provide a plethora of new and novel solutions to specific problems related to improving the reliability, speed, and efficiency of a virtualized network.

20. The patented inventions disclosed and claimed in the patents in suit do not preempt all the ways that the claimed inventive features in a virtualized network architecture may be used to improve its reliability, speed, or efficiency, nor do the patents in suit preempt any other well-known or prior art technology.

21. Accordingly, the claims in the patents in suit each recite a combination of elements sufficient to ensure that each claim in substance and in practice amounts to significantly more than a patent-ineligible abstract idea.

**Prior Litigation**

22. The '482 patent, the '256 patent, the '105 patent, the '687 patent and the '328 patent have all been asserted recently in *UMBRA v. Fortinet, Inc.*, Eastern District of Texas, Case No. 2:25-cv-00329 (pending), filed on April 2, 2025, in which Defendant has not yet been served.

23. The '482 patent, the '687 patent and the '328 patent have been asserted recently, with other patents, in *UMBRA v. Juniper Networks, Inc.*, District of Delaware, Case No. 1:24-cv-01288 (pending), in which Defendant waived service of the complaint on February 18, 2025. A

Motion to Dismiss was filed by the Defendant and First, Second and Third Amended Complaints have been filed. An answer or other reply is pending.

24. The '482 patent was also previously litigated in *UMBRA v. VMware, Inc.*, Northern District of California, Case No. 3:24-cv-01609 (dismissed) and is presently asserted in *UMBRA v. Cisco Systems, Inc.*, Western District of Texas, Case No. 1:23-cv-00903 (pending), which is stayed at the time of this filing. The '482 patent was previously the subject of a petition to the United States Patent and Trademark Office ("USPTO") Patent Trial and Appeal Board ("PTAB"), IPR2024-00498, filed by Cisco Systems Inc., requesting Inter Partes Review ("IPR") of the claims of the '482 patent. The petition requesting institution of an IPR proceeding was denied.

**COUNT I – INFRINGEMENT OF U.S. PATENT NO. 10,574,482**

25. The allegations set forth in the foregoing paragraphs are incorporated into this First Claim for Relief.

26. On February 25, 2020, the '482 patent was duly and legally issued by the United States Patent and Trademark Office under the title "MULTI-PERIMETER FIREWALL IN THE CLOUD".

27. UMBRA is the assignee and owner of the right, title and interest in and to the '482 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of them.

28. Upon information and belief, PAN has and continues to directly infringe at least one claim of the '482 patent by selling, offering to sell, making, using, and causing to be used PAN systems and methods, including one or more hardware and software products for network virtualization and related services, which by way of example include but are not limited to the

PAN products and services identified in Exhibit 6 hereto (the "Accused Instrumentalities" identified herein collectively as listed in Exhibits 6-10).

29. Exemplary infringement analysis showing infringement of at least one claim of the '482 patent is set forth in Exhibit 6.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by PAN with respect to the '482 patent. UMBRA reserves all rights to amend, supplement and modify this preliminary infringement analysis.  Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '482 patent.

30. The Accused Instrumentalities infringed and continue to infringe at least one claim of the '482 patent.

31. UMBRA has been harmed by PAN's infringing activities.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 10,659,256

32. The allegations set forth in the foregoing paragraphs are incorporated into this Second Claim for Relief.

33. On May 19, 2020, the '256 patent was duly and legally issued by the United States Patent and Trademark Office under the title "SYSTEM AND METHOD FOR VIRTUAL INTERFACES AND ADVANCED SMART ROUTING IN A GLOBAL VIRTUAL NETWORK".

34. UMBRA is the assignee and owner of the right, title and interest in and to the '256 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of them.

35. Upon information and belief, PAN has and continues to directly infringe at least one claim of the '256 patent by selling, offering to sell, making, using, and causing to be used

PAN systems and methods, including one or more hardware and software products for network virtualization and related services, which by way of example include but are not limited to the PAN products and services identified in Exhibit 7 hereto (the "Accused Instrumentalities" identified herein collectively as listed in Exhibits 6-10).

36. Exemplary infringement analysis showing infringement of at least one claim of the '256 patent is set forth in Exhibit 7. This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by PAN with respect to the '256 patent. UMBRA reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '256 patent.

37. The Accused Instrumentalities infringed and continue to infringe at least one claim of the '256 patent.

38. UMBRA has been harmed by PAN's infringing activities.

**COUNT III – INFRINGEMENT OF U.S. PATENT NO. 11,503,105**

39. The allegations set forth in the foregoing paragraphs are incorporated into this Third Claim for Relief.

40. On November 15, 2022, the '105 patent was duly and legally issued by the United States Patent and Trademark Office under the title "SYSTEM AND METHOD FOR CONTENT RETRIEVAL FROM REMOTE NETWORK REGIONS".

41. UMBRA is the assignee and owner of the right, title and interest in and to the '105 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of them.

42. Upon information and belief, PAN has and continues to directly infringe at least one claim of the '105 patent by selling, offering to sell, making, using, and causing to be used PAN systems and methods, including one or more hardware and software products for network virtualization and related services, which by way of example include but are not limited to the PAN products and services identified in Exhibit 8 hereto (the "Accused Instrumentalities" identified herein collectively as listed in Exhibits 6-10).

43. Exemplary infringement analysis showing infringement of at least one claim of the '105 patent is set forth in Exhibit 8.  This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by PAN with respect to the '105 patent. UMBRA reserves all rights to amend, supplement and modify this preliminary infringement analysis.  Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '105 patent.

44. The Accused Instrumentalities infringed and continue to infringe at least one claim of the '105 patent.

45. UMBRA has been harmed by PAN's infringing activities.

**COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 11,799,687**

46. The allegations set forth in the foregoing paragraphs are incorporated into this Fourth Claim for Relief.

47. On October 24, 2023, the '687 patent was duly and legally issued by the United States Patent and Trademark Office under the title "SYSTEM AND METHOD FOR VIRTUAL INTERFACES AND ADVANCED SMART ROUTING IN A GLOBAL VIRTUAL NETWORK".

48. UMBRA is the assignee and owner of the right, title and interest in and to the '687 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of them.

49. Upon information and belief, PAN has and continues to directly infringe at least one claim of the '687 patent by selling, offering to sell, making, using, and causing to be used PAN systems and methods, including one or more hardware and software products for network virtualization and related services, which by way of example include but are not limited to the PAN products and services identified in Exhibit 9 hereto (the "Accused Instrumentalities" identified herein collectively as listed in Exhibits 6-10).

50. Exemplary infringement analysis showing infringement of at least one claim of the '687 patent is set forth in Exhibit 9. This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by PAN with respect to the '687 patent. UMBRA reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '687 patent.

51. The Accused Instrumentalities infringed and continue to infringe at least one claim of the '687 patent.

52. UMBRA has been harmed by PAN's infringing activities.

**COUNT V – INFRINGEMENT OF U.S. PATENT NO. 12,160,328**

53. The allegations set forth in the foregoing paragraphs are incorporated into this Fifth Claim for Relief.

54. On December 3, 2024, the '328 patent was duly and legally issued by the United States Patent and Trademark Office under the title "MULTI-PERIMETER FIREWALL IN THE CLOUD".

55. UMBRA is the assignee and owner of the right, title and interest in and to the '328 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of them.

56. Upon information and belief, PAN has and continues to directly infringe at least one claim of the '328 patent by selling, offering to sell, making, using, and causing to be used PAN systems and methods, including one or more hardware and software products for network virtualization and related services, which by way of example include but are not limited to the PAN products and services identified in Exhibit 10 hereto (the "Accused Instrumentalities" identified herein collectively as listed in Exhibits 6-10).

57. Exemplary infringement analysis showing infringement of at least one claim of the '328 patent is set forth in Exhibit 10. This infringement analysis is necessarily preliminary, as it is provided in advance of any discovery provided by PAN with respect to the '328 patent. UMBRA reserves all rights to amend, supplement and modify this preliminary infringement analysis. Nothing in the attached chart should be construed as any express or implied contention or admission regarding the construction of any term or phrase of the claims of the '328 patent.

58. The Accused Instrumentalities infringed and continue to infringe at least one claim of the '328 patent.

59. UMBRA has been harmed by PAN's infringing activities.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, UMBRA demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, UMBRA demands judgment for itself and against PAN as follows:

A. An adjudication that PAN has infringed the patents in suit;

B. An award of damages to be paid by PAN adequate to compensate UMBRA for PAN's past infringement of the patents in suit, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C. A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of UMBRA's reasonable attorneys' fees; and

D. An award to UMBRA of such further relief at law or in equity as the Court deems just and proper.

Dated: June 13, 2025

Respectfully submitted,

DEVLIN LAW FIRM LLC

*/s/ Timothy Devlin*
Timothy Devlin (DE. No. 4241)
tdevlin@devlinlawfirm.com
James M. Lennon (DE No. 4570)
jlennon@devlinlawfirm.com
Patrick R. Delaney (DC Bar No. 472266)
pdelaney@devlinlawfirm.com
Joel W. Glazer (DE No. 6663)
jglazer@devlinlawfirm.com
1526 Gilpin Ave.
Wilmington, DE 19806
Tel: (302) 449-9010
Fax: (302) 353-4251

*Attorneys for Plaintiffs*
*UMBRA Technologies Ltd. (UK), & UMBRA Technologies (US) Inc., dba UMBRA Technologies*