**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| UMBRA TECHNOLOGIES LTD. (UK) *and* UMBRA TECHNOLOGIES (US), INC. d/b/a UMBRA TECHNOLOGIES, | § | |
| *Plaintiffs*, | § | CASE NO. 2:25-CV-00635-JRG-RSP (Lead Case) |
| v. | § | |
| PALO ALTO NETWORKS, INC., | § | |
| *Defendant*. | § | |

**MEMORANDUM ORDER**

Before the Court is Plaintiffs' Motion for Leave to Amend and Supplement Infringement Contentions, **Dkt. No. 111.** In the Motion, Plaintiffs UMBRA Technologies Ltd. (UK) and UMBRA Technologies (US), Inc. (together, "UMBRA") seek leave to supplement their infringement contentions to add an induced-infringement theory against Defendant Palo Alto Networks, Inc. (PAN). UMBRA bases its request on PAN's August 3, 2026 interrogatory response identifying customers and their agents as the actors who allegedly perform certain claim limitations. UMBRA emphasizes that the proposed amendment does not add patents, asserted patent claims, or accused instrumentalities. Nonetheless, having considered the Motion and related briefing (Dkt. Nos. 117, 120, 134), the Court **DENIES** the Motion.

## I. BACKGROUND

### A. UMBRA's Allegations

UMBRA alleges infringement by PAN of five patents related to networking technology. It characterizes the asserted patents as resulting from pioneering work in secure network optimization, virtualized networking, global virtual networks, next-generation SD-WAN, advanced smart routing, remote content delivery, and multi-perimeter firewall technology. Compl., Dkt. No. 1 ¶ 11. Accord-

ing to UMBRA, the asserted inventions address technical limitations in networking technologies by improving network-path control, connectivity, quality of service, remote content retrieval, latency, and network security through virtual interfaces, smart routing, and distributed firewall systems. *Id.* ¶¶ 12–18.

**B. UMBRA's Interrogatory Nos. 11 and 16**

The Motion concerns PAN's responses to two UMBRA interrogatories about PAN's non-infringement positions. In November 2025, UMBRA served Interrogatory No. 11, which asked PAN to, for each asserted claim it contends it does not infringe,

> describe in detail the factual and legal bases for your assertion, including providing a claim chart for each Accused Instrumentality showing on a limitation-by-limitation basis any limitations that you believe are not satisfied, and identifying all evidence upon which you rely and the persons with relevant knowledge.

PAN's Resps. & Objs. to Pls.' First Set of Interrogs. (Dec. 15, 2025), Dkt. No. 111-3 at 2–3. In December 2025, PAN responded:

> PAN does not directly or indirectly infringe, and has not directly or indirectly infringed, any of the Asserted Claims . . . whether literally, under the doctrine of equivalents, or under a theory of joint infringement.
>
> UMBRA has not articulated any theory of indirect infringement, joint infringement, or infringement under the doctrine of equivalents . . . .

*Id.* at 5. In May 2026, PAN supplemented its response, which UMBRA characterizes as adding additional claim-scope and limitation-based reasons for why particular claim limitations were not met, but not identifying any limitations allegedly performed by others. Dkt. No. 111 at 3.

On July 2, 2026, about five weeks before the August 11 deadline for UMBRA to amend its Complaint, *see* Docket Control Order, Dkt. No. 41 at 4, UMBRA served Interrogatory No. 16. That interrogatory asked PAN whether it contended that any of the asserted claims was not directly in-

fringed because someone other than PAN performed or operated claimed elements. It also requested the facts supporting any such contention. PAN's Resps. & Objs. to UMBRA's Third Set of Interrogs. (Aug. 3, 2026), Dkt. No. 111-2 at 2, 5–6. PAN responded:

> PAN does not directly infringe by making, using, selling, or offering to sell any accused product because PAN does not sell a system that is configured to meet the Asserted Claim limitations as sold; rather, the accused products require configuration, deployment, and integration by the customer or third parties before the accused functionality could be performed, and certain components of the accused system are provided by the customer or third parties rather than by PAN. . . . PAN does not directly infringe by using any accused system because the accused systems, as deployed, are used and operated by the customer or other third parties—not by PAN—and no single entity practices every element of any Asserted Claim.

*Id.* at 9. PAN then identified claim limitations for which it contended that, even if the limitations were met, creating an infringing system or performing an infringing method would require acts by someone other than PAN. *Id.* at 10–18.

On August 19, 2026, sixteen days after PAN served its response to Interrogatory No. 16, UMBRA notified PAN that it intended to amend its infringement contentions and Complaint and requested PAN's consent. Email from B. Tollefson to T. Saulsbury (Aug. 19, 2026), Dkt. No. 117-2 at 2. The parties conferred on September 4, 2026, Dkt. No. 111 at 4, and UMBRA filed the Motion that day. UMBRA contends that PAN's response was the first limitation-by-limitation disclosure in which PAN attributed performance of certain claim limitations to others and that no single entity practiced every limitation of an asserted claim. Dkt. No. 111 at 1–2.

### C. UMBRA's Motion for Leave to Amend

UMBRA's existing contentions assert that PAN directly infringes under 35 U.S.C. § 271(a), while the proposed supplementation adds theories addressing PAN's newly disclosed position by alleging that customer-performed acts are attributable to PAN and, alternatively, that PAN induces in-

fringement through the products, interfaces, documentation, instructions, configuration tools, training, and technical support it provides. Pls.' Second Suppl. Disclosure of Asserted Claims & Infringement Contentions (Aug. 26, 2026), Dkt. No. 111-1 at 5–10. UMBRA emphasizes that the proposed amendment does not add any patents, asserted patent claims, or accused instrumentalities, but instead supplements the existing charts by incorporating additional allegations directed to the customer conduct identified in PAN's response to Interrogatory No. 16. Dkt. No. 111 at 5. UMBRA characterizes the difference between its current and proposed contentions as the addition of alternative direct-infringement, attribution, and induced-infringement theories responsive to PAN's assertion that customers configure, deploy, and operate aspects of the accused functionality, while preserving its original contention that PAN itself directly infringes the asserted patent claims. *Id.*

PAN argues the Court should deny the Motion because (1) UMBRA's Complaint pleads only direct infringement, (2) induced infringement is a separate claim with distinct pleading requirements, and (3) UMBRA neither amended nor sought leave to amend the Complaint before the August 11, 2026 deadline to amend pleadings. Dkt. No. 117 at 2–3. PAN further contends that UMBRA cannot establish diligence because the public PAN documents underlying the proposed supplementation were available when UMBRA filed suit, UMBRA waited about ten months into discovery to serve Interrogatory No. 16, and UMBRA received PAN's response on August 3, 2026—eight days before the pleading deadline—but did not timely amend the Complaint. *Id.* at 3–7. PAN also argues that its December 2025 response to Interrogatory No. 11 denied direct and indirect infringement and noted that UMBRA had not articulated an indirect-infringement theory. But UMBRA did not challenge the response's sufficiency and later stated it did not then allege indirect or joint infringement distinct from its direct-infringement theory. *Id.* at 7. Finally, PAN asserts the proposed amendment would cause unfair prejudice because it relied on UMBRA's prior position when determining what discov-

ery to pursue, and it would now need third-party discovery concerning customers' actual system configurations, operations, and independent deployment decisions, which cannot be completed without extending fact discovery and disrupting the expert, pretrial, and trial schedule. *Id.* at 8–10.

Before it filed the Motion, UMBRA told PAN that it intended to amend the Complaint to add indirect- and joint-infringement theories. *See, e.g.*, Email from B. Tollefson to T. Saulsbury (Aug. 19, 2026), Dkt. No. 117-2 at 2 (stating that UMBRA "also intends to amend the complaint to add claims for indirect infringement (inducement and/or contributory infringement) and joint/divided infringement"). UMBRA, however, has not moved to amend the Complaint and instead seeks leave only to amend its infringement contentions. This choice is consistent with UMBRA's purported representation during the September 4 meet-and-confer that it did not think it needed to amend the Complaint. Dkt. No. 120 at 2. UMBRA maintains that amendment of the Complaint is unnecessary because it alleges PAN infringes "by selling, offering to sell, making, using, and causing to be used PAN systems and methods," and that the proposed supplementation merely adds detail concerning how PAN allegedly "causes" infringement. *Id.* at 2–3.

## II. LEGAL STANDARDS

This District's Patent Rules require that, early in a case, "a party claiming patent infringement must serve on all parties a 'Disclosure of Asserted Claims and Infringement Contentions.'" P.R. 3-1. The Contentions must identify (a) each asserted claim, (b) each accused instrumentality; (c) "where each element of each asserted claim is found within each Accused Instrumentality," (d) "[w]hether each element of each asserted claim is claimed to be literally present or present under the doctrine of equivalents," (e) "the priority date to which each asserted claim allegedly is entitled," and (f) in some cases, each of the plaintiff's own instrumentalities that practice the asserted patent claims. *Id.* Unlike some other districts' patent rules, P.R. 3-1 does not require a patentee to identify

whether alleged infringement is direct, indirect, or joint. *Compare* E.D. Tex. P.R. 3-1(a)–(f), *with* S.D. Cal. Patent L.R. 3.1(d) (requiring identification of the predicate direct infringement, the alleged indirect infringer's inducing or contributing acts, and the role of each participant in any joint infringement), *and* D. Kan. Pat. R. 3.1(d) (same).

Except in circumstances not applicable here, infringement contentions may be amended only with a showing of good cause. P.R. 3-6(b). Good cause requires a showing of diligence. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006). In determining whether good cause exists, courts consider: "(1) the explanation for the failure to meet the deadline; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003).

The standard for granting leave to amend a complaint is different. When a party seeks to amend its complaint after the scheduling-order deadline for doing so, the party must first satisfy the good-cause requirement of Fed. R. Civ. P. 16(b)(4). Good cause under Rule 16(b)(4) focuses on the movant's diligence and requires the movant to show that the scheduling-order deadline could not reasonably have been met despite its diligent efforts. *See Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*, No. 2:22-CV-00125-JRG, 2023 WL 8260841, at *1 (E.D. Tex. Nov. 28, 2023). Only after the movant satisfies Rule 16(b)(4) does the court consider whether amendment is appropriate under the more liberal standard of Fed. R. Civ. P. 15(a). *See Wapp Tech Ltd. P'ship v. Micro Focus Int'l, PLC*, 406 F. Supp. 3d 585, 593 (E.D. Tex. 2019). In short, while amendment of infringement contentions turns on the P.R. 3-6 good-cause factors, amendment of a complaint after the pleading-amendment deadline requires the movant to first satisfy Rule 16(b)(4)'s standard.

## III. DISCUSSION

This is a pleadings-versus-contentions problem. The dispute is not whether infringement contentions can contain indirect-infringement theories, but whether UMBRA may add those theories to the case through amended contentions with the same procedural effect as if it amended the complaint.

It may not. Induced infringement is a distinct claim with its own pleading requirements, like knowledge and specific intent. *See Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372 (Fed. Cir. 2017) (noting that, "for an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer specifically intended another party to infringe the patent and knew that the other party's acts constituted infringement" (cleaned up)). Although UMBRA seeks to amend its contentions to add indirect infringement, that's not the purpose of contentions. And because P.R. 3-1 does not require identification of whether the infringement is direct, indirect, or joint, the proposed amendment to the contentions would have no procedural effect so far as the case's notice requirements are concerned.[1]

UMBRA relies on *R2 Solutions LLC v. Deezer, S.A.*, No. 4:21-cv-00090, Dkt. No. 55 (E.D. Tex. Mar. 4, 2022), and *LBS Innovations, LLC v. Aaron Bros., Inc.*, No. 2:11-cv-00142, 2012 U.S. Dist. LEXIS 196806 (E.D. Tex. Nov. 9, 2012), Dkt. No. 120 at 5, but both cases are distinguishable. In *R2 Solutions*, the plaintiff moved for leave to amend its *complaint* to add induced infringement after the defendant's interrogatory response disclosed the factual predicate for those claims, and the

[1] Alternatively, it could have a negative effect by confusing the parties about where the case stands. For example, had UMBRA articulated an indirect-infringement claim in its initial contentions but not in the Complaint, would that claim be in the case? Under UMBRA's reasoning it would, but PAN would disagree, and it might not come to the Court's attention until late in the case. Hence the need to respect each document's purpose.

court evaluated that request under the standards governing amendment of pleadings. *R2 Sols.*, Dkt. No. 55 at 1–4. In *LBS Innovations*, the plaintiff likewise moved for leave to amend its *complaint* to add indirect-infringement allegations consistent with indirect-infringement theories that it had already disclosed in amended infringement contentions. *LBS Innovations*, 2012 U.S. Dist. LEXIS 196806, at *2–3, *5–6. Thus, neither case authorized a plaintiff to pursue an unpleaded indirect-infringement claim merely by amending its infringement contentions, as UMBRA does here.

Here, the very nature of the proposed amendments further bolsters the conclusion. Foremost, UMBRA does not seek to amend any of the information required by P.R. 3-1. So, if none of the required information is amended if leave is granted, what purpose would the amendment serve, other than provide an easier path to bring an as-of-yet unasserted claim into the case. While that might seem a minor point—after all, PAN already has actual knowledge of the proposed contentions and could proceed accordingly—the standards for amending contentions and the complaint are different. In this case, under either standard, the prejudice to Defendant from the late amendment outweighs the importance to the Plaintiff, given the lack of diligence. Accordingly, the Court **DENIES** the motion.

**SIGNED this 15th day of November, 2026.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE